[Cite as *State v. Brown*, 2012-Ohio-5049.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26309 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MELTON BROWN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 07 1872 |

DECISION AND JOURNAL ENTRY

Dated: October 31, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** After watching for twenty to thirty minutes as a known prostitute attempted to solicit drivers on East Buchtel Avenue, Akron police officers approached a known drug house to arrest the woman for solicitation. One officer testified that he saw Melton Brown, who was on the front porch, drop something over the railing before going inside the house. When the officer investigated, he found three baggies containing drugs on the ground beside the porch beneath the place Mr. Brown had been sitting on the railing. When Mr. Brown was arrested, police found $650.00 on him. A jury convicted him of possession of cocaine, possession of heroin, aggravated possession of drugs, trafficking in cocaine, and trafficking in heroin, with a criminal forfeiture specification on each count in regard to the $650.00. After holding an evidentiary hearing, the trial court denied Mr. Brown's motion for a new trial based on newly discovered

evidence. He has appealed. This Court affirms because the trial court correctly denied his motion for a new trial and his convictions were not against the manifest weight of the evidence.

BACKGROUND

{¶2} A jury found Mr. Brown guilty of all charges on November 22, 2011. On December 13, 2011, he moved the trial court for a new trial based on newly discovered evidence. In support of his motion, Mr. Brown submitted the affidavit of Raymond Fox. At an evidentiary hearing on the motion, Mr. Fox testified that he had witnessed the arrest of Mr. Brown and had seen someone else discard the drugs police found on the ground by the porch. The trial court denied the motion for a new trial because it determined that the newly discovered evidence merely impeaches or contradicts the evidence produced at trial and the testimony does not have a strong probability of changing the result of the trial.

NEW TRIAL

{¶3} Under Rule 33 of the Ohio Rules of Criminal Procedure, "[a] new trial may be granted on motion of the defendant . . . [w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim. R. 33(A)(6). "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505, syllabus (1947).

**{¶4}** This Court has explained that "*Petro* does not establish a per se rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is whether the newly discovered evidence would create a strong probability of a different result at trial." *State v. Roper*, 9th Dist. No. 22494, 2005-Ohio-4796, ¶ 20 (quoting *State v. Cureton*, 9th Dist. Nos. 03CA0009-M & 03CA0010-M, 2003-Ohio-6010, ¶ 19). Newly discovered evidence that merely impeaches or contradicts the former evidence "very well could have resulted in a different verdict[,]" but that is not enough to satisfy the test for granting a new trial. *State v. Pannell*, 9th Dist. No. 96CA0009, 1996 WL 515540, *3 (Sept. 11, 1996). There must be a strong probability that the new evidence would change the verdict. *Id.*

**{¶5}** At Mr. Brown's trial, Officer Justin Ingham testified that he checked on the house at 832 East Buchtel Avenue on July 12, 2011, because it had been the source of a variety of complaints for drug activity and prostitution. That night, Officer Ingham saw a woman in front of the house trying to get cars to stop for her on Buchtel Avenue. Officer Ingham recognized the woman as a known prostitute and drug user. He testified that he watched the front of the house for about 30 minutes. During that time, he saw the prostitute attempting to stop cars and a man on the front porch of the house occasionally talking to her.

**{¶6}** Officer Ingham testified that, when he moved in to arrest the prostitute, he saw two men in the yard near the driveway and one man on the porch with the prostitute. He identified Mr. Brown as the man he saw sitting on the railing of the porch when he approached the woman. The officer explained that he continued to watch Mr. Brown as he placed handcuffs on the prostitute. He said that, due to his training, he kept an eye on Mr. Brown's hands to be sure he was not reaching for a weapon. The officer testified that he watched Mr. Brown "drop[ ]

his right hand behind his leg out of view by the railing. You could see it kind of make a little flinching motion. And then I could hear something hit the ground below him." Officer Ingham completed the arrest of the prostitute and escorted her to the police cruiser. Officer Ingham's partner, Brent Heller, testified that, as Officer Ingham passed him on his way to the cruiser, Officer Ingham told him to watch the man on the porch because he thought he had seen the man drop something. A few seconds later, Mr. Brown stood up and went in the house.

{¶7} When Officer Ingham returned from the cruiser, he found three baggies sitting on top of a bunch of dried leaves on the ground near where Mr. Brown appeared to have dropped something over the railing. The officer testified that the baggies were clean, dry, and free of debris. He also testified that the baggies contained cocaine, heroin, and oxycodone. Officer Ingham testified that he found the drugs around the side of the porch, near where Mr. Brown had been sitting on the railing, which was the opposite side of the house from where the other two men were standing in the driveway. He said that only Mr. Brown had been in that vicinity. Officer Brent Heller testified that he went inside the house to arrest Mr. Brown after Officer Ingham found the drugs on the ground. Officer Heller testified that Mr. Brown admitted that he had been sitting on the porch when police arrived.

{¶8} At the hearing on the motion for a new trial, Mr. Brown presented the testimony of Raymond Fox. Mr. Fox testified that he was at the Buchtel house when police arrested Mr. Brown. He said that he had been unavailable until after Mr. Brown's trial because he had been serving time in jail before staying briefly at a number of different houses all over Akron. Mr. Fox testified that the house on Buchtel was a crack house and that he had gone there that night to get high. He testified that, when police arrived, there were six to eight people on the porch, including three drug dealers, and several more people were standing in the yard. Mr. Fox said

that he saw a drug dealer named Calvin Thomas drop the baggies of drugs that police found by the porch. Mr. Fox also testified that he knew Mr. Thomas was a drug dealer because he had purchased drugs from Mr. Thomas just moments before police arrived.

{¶9} The trial court denied Mr. Brown's motion because it determined that Mr. Fox's testimony merely impeaches and contradicts the evidence produced at trial and that it did not create a strong probability of changing the verdict. This Court agrees that the new evidence merely contradicts the officers' testimony about the number of people standing on the porch and in the front yard when they approached to arrest the prostitute. Mr. Fox's testimony also contradicts Officer Ingham's trial testimony that he both saw and heard Mr. Brown drop something over the side railing of the porch and that Mr. Brown was the only person on that side of the porch at the time. Although Officer Heller testified that Mr. Fox was present at the house that night, the officer said that Mr. Fox was sitting just inside the front door while Mr. Fox testified that he was outside on the porch talking to Mr. Brown when police arrived. Mr. Fox testified that he has a criminal record and an active drug problem and that he had gone to the Buchtel house that night to buy drugs and get high. His testimony, that merely contradicts that of the two Akron City police officers, is unlikely to convince a jury to acquit Mr. Brown of these charges. Without creating a strong probability of changing the outcome of the trial, the new evidence fails to meet the standard of Criminal Rule 33. The trial correctly denied the motion for a new trial. Mr. Brown's first assignment of error is overruled.

MANIFEST WEIGHT OF THE EVIDENCE

{¶10} Mr. Brown's second assignment of error is that his convictions are against the manifest weight of the evidence. He has argued that, because the house was known to harbor drug users and dealers and at least four people were present outside with an untold number inside

the home at the time, "the state was required to present some evidence connecting [Mr. Brown] to the drugs [found] on the ground." If a defendant argues that his convictions are against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986).

{¶11} The State presented evidence from a police officer who testified that he both saw and heard Mr. Brown drop something off the side of the porch. Officer Ingham testified that Mr. Brown was the only person in the vicinity of where the drugs were found. Although the officer did not see the drugs in Mr. Brown's hand, this is not a case of police having charged the person standing closest to where drugs were eventually found. Both officers testified that they had planned to arrest the prostitute and leave the scene, but after Officer Ingham saw Mr. Brown discard something over the side of the porch, he decided to investigate. Officer Ingham had no reason to walk around the side of the house except to check the ground beneath where Mr. Brown had been sitting on the porch because he believed that he had seen Mr. Brown discard something in that area. The officer testified that he found three clean, dry baggies of drugs on top of a pile of dried leaves very close to where Mr. Brown had been sitting on the railing above. Upon review of the record, we conclude that the jury did not lose its way when it found that Mr. Brown was the person who dropped the drugs beside the house. Mr. Brown's second assignment of error is overruled.

CONCLUSION

**{¶12}** Mr. Brown's first assignment of error is overruled because the trial court correctly denied his motion for a new trial based on newly discovered evidence. His second assignment of error is overruled because his convictions are not against the manifest weight of the evidence. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.